***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Houser with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff sustained an admittedly compensable injury by accident to her left knee on November 5, 2003. *Page 2 
2. Defendants filed an Industrial Commission Form 60 dated February 21, 2005 admitting plaintiff's right to compensation for an injury by accident that occurred on November 5, 2003 to her left knee.
3. Plaintiff commenced medical treatment with Dr. Matthew Ohl of Charlotte Orthopedic Specialists, now OrthoCarolina, and Dr. Ohl performed surgery on February 20, 2004 to repair a tear of the medial meniscus of the left knee, and a small chondral lesion of medial femoral condyle.
4. Dr. Ohl performed a second surgery on October 8, 2004 to repair a tear of the medial meniscus of the left knee and a chondral lesion.
5. Dr. Ohl last examined plaintiff on September 28, 2005 at which time he released her to return on a "p.r.n. basis" and indicated that she should call him if her symptoms worsened.
6. In March 2006, plaintiff requested a second opinion pursuant to N.C. Gen. Stat. § 97-27(b) with Dr. Jerry Barron. On June 12, 2006, Dr. Barron recommended surgery consisting of arthroscopic meniscectomy, debridement, chondroplasty, and possible removal of loose body.
7. Defendants have not authorized the surgery recommended by Dr. Barron.
8. In July 2006, defendants advised plaintiff that they would not consent to Dr. Barron as her treating physician, but that they would authorize follow up treatment with Dr. Ohl, or in the alternative they will authorize treatment with Dr. Roy Majors or Dr. Yates Dunaway.
9. In September 2006, plaintiff wrote defendants and proposed that she be evaluated by Dr. Thomas McCoy of OrthoCarolina, and defendants subsequently agreed to that proposal.
10. Dr. McCoy evaluated plaintiff and wrote on December 26, 2006 that he did not recommend additional treatment. *Page 3 
11. On all relevant dates, plaintiff's average weekly wage was $574.00 yielding a compensation rate of $382.69.
12. On all relevant dates, the parties hereto were subject to and bound by the provisions in the North Carolina Workers' Compensation Act.
13. On all relevant dates, an employee-employer relationship existed between plaintiff-employee and defendant-employer.
14. On all relevant dates, defendant-employer employed 3 or more employees.
15. On all relevant dates, the carrier of workers' compensation insurance in North Carolina for defendant-employer was American Casualty Company, which is part of the CNA group.
16. At the evidentiary hearing, the parties submitted the following
 a. a packet containing medical records, Industrial Commission Forms, vocational rehabilitation records and investigative reports, which was admitted into the record, and marked as Stipulated Exhibit (2), and;
 b. a surveillance video, which was admitted into the record, and marked as Stipulated Exhibit (3).
17. At the evidentiary hearing, defendants submitted the following:
 a. an Industrial Commission Form 33R, which was admitted into the record, and marked as Defendants' Exhibit (1).
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. At the time of the evidentiary hearing, plaintiff was 59 years old, with her date of birth being on August 20, 1948.
2. Also at the time of the evidentiary hearing, plaintiff had been employed through defendant-employer at Selectron Technologies for nine years. As of November 5, 2003, plaintiff worked at Selectron in the shipping department.
3. Prior to November 5, 2003, plaintiff had never experienced a significant problem with her left knee and had never been treated by a physician for her left knee or prescribed medication for her left knee.
4. On November 5, 2003, plaintiff sustained a compensable injury by accident when she slipped on a wet floor and fell. As she fell, plaintiff was unable to put her hands down to brace herself and consequently, landed directly on her left knee. Plaintiff promptly reported this incident to her manager, who called the first responder. The first responder applied ice to plaintiff's left knee. Plaintiff later discovered in the restroom that her left knee was already severely swollen and bruised.
5. Plaintiff first sought medical treatment at the emergency room at Carolinas Medical Center on the date of her injury. At that facility, x-rays were taken and plaintiff was given crutches and referred to Dr. Matthew Ohl.
6. Plaintiff was first examined by Dr. Ohl on November 17, 2003. Dr. Ohl reviewed the x-rays from the hospital and opined that plaintiff had not sustained a fracture to her patella or kneecap.
7. Following this initial examination by Dr. Ohl, plaintiff continued to experience extreme pain in her left knee. Plaintiff then returned to Dr. Ohl on December 30, 2003 at which time Dr. Ohl again reviewed the original x-rays from the hospital and discovered that there was a *Page 5 
fracture to the anterior aspect of the patella. Dr. Ohl then apologized to plaintiff for not detecting this fracture at the time of her initial examination.
8. On January 21, 2004, plaintiff again returned to Dr. Ohl and reported continuing pain in her left knee. Dr. Ohl then ordered an MRI which revealed a tear in the posterior horn of the medial meniscus of plaintiff's left knee. For this condition, Dr. Ohl recommended that plaintiff undergo a left knee arthroscopy and meniscectomy.
9. On February 20, 2004, plaintiff underwent surgery performed by Dr. Ohl which consisted of an arthroscopy of left knee with medial meniscal repair.
10. Following this initial surgery, plaintiff underwent extensive physical therapy, including approximately 65 sessions of water therapy. Nonetheless, plaintiff's left knee continued to worsen. With these ongoing symptoms, Dr. Ohl recommended a second MRI which was performed on June 18, 2004. This MRI did not reveal a convincing meniscal tear and Dr. Ohl returned plaintiff to return to work with restrictions on June 22, 2004.
11. Thereafter, plaintiff continued to experience significant problems with her left knee and Dr. Ohl recommended a second surgery due to his concern that the meniscus had not healed.
12. On October 8, 2004, Dr. Ohl performed a second surgery on plaintiff's left knee which consisted of an arthroscopy, a mild chondroplasty and posterior medial meniscectomy. During this surgery, Dr. Ohl confirmed that plaintiff had a second tear or a re-tear of the medial meniscus in her left knee.
13. Following this second surgery, plaintiff again underwent extensive physical therapy, but her left knee continued to become weaker. For these ongoing symptoms, Dr. Ohl injected plaintiff with Kenolog and Lidocaine and eventually tried a series of three SYNVISC *Page 6 
injections during the period of May 19, 2005 to June 1, 2005. Plaintiff received some relief from these injections for about three months, but then her left knee pain returned.
14. On September 28, 2005, plaintiff returned to Dr. Ohl and reported continued soreness and pain in her left knee. Despite these continued complaints, Dr. Ohl indicated at that time that plaintiff had reached maximum medical improvement, assigned 15% permanent partial impairment rating to the left knee, and released her from his care. Additionally, Dr. Ohl indicated that plaintiff would need intermittent steroid and SYNVISC injections for the inflammation and that a total knee replacement in the future was a possibility.
15. Subsequent to September 28, 2005, plaintiff's left knee continued to worsen and she experienced difficulty straightening it. Plaintiff then requested a second opinion with Dr. Jerry Barron.
16. Plaintiff was first examined by Dr. Barron on April 27, 2006 and his examination revealed that she had flexion contracture of the left knee which means she was unable to straighten it. This examination was also suggestive of further problems with the meniscus of her left knee.
17. Dr. Barron has opined that plaintiff potentially sustained two separate injuries at the time of her November 5, 2003 injury by accident, one to the patellofemoral area, which involved the fracture or fractures of her kneecap, and another in the meniscus area. Dr. Barron then recommended an MRI which was taken on May 16, 2006. The results of the MRI revealed that although the patellofemoral area, or kneecap, was healing, there was a short oblique tear of the medial meniscus. Based upon these results, Dr. Barron recommended surgery consisting of an arthroscopic meniscectomy, debridement, chondroplasty, and possible removal of loose body. The surgery recommended by Dr. Barron was not authorized by defendants. *Page 7 
18. On May 23, 2006, defendants communicated to plaintiff their willingness to discuss the substitution of another physician as the authorized treating physician if she did not want to return to Dr. Ohl.
19. On July 7, 2006, defendants communicated to plaintiff that if she did not want to return to Dr. Ohl, then defendants would be willing for either Dr. Roy Majors or Dr. Yates Dunaway to become her authorized treating physician. Additionally, defendants indicated that if plaintiff would propose a physician other than one from Perry Barron that they were willing to discuss that possibility.
20. On August 28, 2006, Special Deputy Commissioner Meredith R. Henderson filed an administrative order in which she denied plaintiff's motion to designate Dr. Barron as her authorized treating physician. The order further provided that plaintiff shall have the option of receiving treatment at defendants' expense from Dr. Roy Majors or Dr. Yates Dunaway; that if plaintiff is unwilling to receive treatment from either Dr. Majors or Dr. Dunaway, then the parties shall try to agree upon some other mutually agreeable physicians; and that either party may request that assistance of the Commission's nurses section. On September 20, 2006 plaintiff proposed to be evaluated by Dr. Thomas McCoy and defendants agreed.
21. Plaintiff was then examined by Dr. Thomas McCoy on December 26, 2006. Following this examination and a review of the May 16, 2006 MRI, Dr. McCoy opined that plaintiff did have another tear or a re-tear of the medial meniscus of her left knee. Nonetheless, Dr. McCoy did not recommend further treatment, noting that while it is possible that another debridement may mitigate her symptoms, it was just as likely to make them worse and would not solve the ongoing degeneration of plaintiff's meniscus and articular cartilage. Dr. McCoy *Page 8 
further opined that this additional tear of the medial meniscus in plaintiff's left knee was exacerbated or caused by her November 5, 2003 injury by accident.
22. On February 28, 2007, plaintiff submitted a second motion for a change of authorized treating physicians to Dr. Barron. On April 2, 2007, Special Deputy Commissioner Henderson filed an administrative order addressing several pending issues and denied the motion for change of treating physicians. Plaintiff filed an Industrial Commission Form 33 Request For Hearing.
23. Subsequent to the evidentiary hearing, defendants requested that plaintiff return to Dr. Ohl for his interpretation of the May 16, 2006 MRI. Plaintiff then met with Dr. Ohl on November 16, 2007. As opposed to the opinions of the radiologist, Dr. Barron and Dr. McCoy, Dr. Ohl opined that plaintiff did not have a tear in the meniscus of her left knee. Dr. Ohl also recommended another MRI.
24. The radiologist who conducted this latest MRI opined that it was difficult to distinguish between a possible recurrent meniscal tear and the prior meniscectomy and surgical repair. The radiologist also noted that plaintiff had tricompartmental degenerative changes in her knee. Dr. Ohl opined that this latest MRI revealed no acute tears to menisci, that plaintiff had a moderate limp, but she had a full range of motion of the left knee, with no evidence of swelling.
25. On February 12, 2008, plaintiff returned to Dr. Barron to obtain his interpretation of her latest MRI. Dr. Barron opined that the MRI suggested possible recurrent meniscal tear and tricompartmental degenerative change. Dr. Barron further noted that upon physical examination, plaintiff continued to have flexion contracture with associated joint line tenderness and reiterated his recommendation for surgery as a result of her pain, her inability to straighten her knee, and the MRI findings. *Page 9 
26. Plaintiff lost confidence in Dr. Ohl as a result of his failure to initially diagnose her left knee fracture, what she believed to be poor results from two surgeries and Dr. Ohl's interpretation of the May 2006 and December 2007 MRIs.
27. Plaintiff would medically benefit from having her care transferred to Dr. Barron and having Dr. Barron designated as her authorized treating physician.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On November 5, 2003, plaintiff sustained an admittedly compensable injury by accident to her left knee. N.C. Gen. Stat. § 97-2(6).
2. Dr. Barron is hereby designated as plaintiff's authorized treating physician. N.C. Gen. Stat. § 97-25.
3. Defendants shall pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including, but not limited to, treatment recommended by Dr. Barron. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1.Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury on November 5, 2003, subject to the provisions of N.C. *Page 10 
Gen. Stat. § 97-25.1, including, but not limited to, treatment by Dr. Barron, who is designated as her authorized treating physician.
2. Defendants shall pay the costs.
This the 22nd day of September, 2008.
 S/___________________
 DIANNE C. SELLERS
 COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1